# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> WILFREDO RODRIGUEZ-MADERA, <br><br> Defendant. | CRIMINAL NO. 16-023 (PAD) |

## OPINION AND ORDER

Delgado-Hernández, District Judge.

Defendant Wilfredo Rodríguez-Madera was charged with possession of a machine gun in furtherance of a drug trafficking crime; possession of a firearm in furtherance of a drug trafficking crime; possession of controlled substances with intent to distribute them; possession of a machine gun; and possession of a firearm by a drug user (Docket No. 3), in violation of 18 U.S.C. § 924(c)(1)(B)(ii), 18 U.S.C § 924(c)(1)(A)(i), 18 U.S.C. § 922(o)(1), 18 U.S.C. § 922(g)(3), and 21 U.S.C. § 841(a)(1) (Docket No. 3). Before the court is defendant's "Motion to Suppress" (Docket No. 56), which the government opposed (Docket No. 61). While the seizure of the items at issue cannot be justified under the "protective sweep" exception to the search-warrant requirement of the Fourth Amendment, it passes muster under two exceptions to that requirement: the clothing modality of "exigent circumstances" and "plain view." On that basis, the motion is DENIED.

## I. BACKGROUND

The charges arise out of the search of defendant's apartment in a walkup complex in Caguas, Puerto Rico, after officers executed at 5:15 a.m. an arrest warrant that the Puerto Rico

Court of First Instance had issued for his arrest in connection with possession of a stolen vehicle. Defendant was arrested and handcuffed in front of the apartment's front door, within the door frame (Hearing Transcript, May 4, 2017 – **TR-1**, at pp. 8-9, 23). After the arrest, officers entered the apartment and conducted a protective sweep, finding and seizing a firearm, an extended magazine, a bullet and a marijuana baggie in defendant's bedroom (**TR-1**, at pp. 8-9, 23; Hearing Transcript, March 15, 2017 - **TR-2**, at pp. 24-25, 29-31, 39). About ten Federal Marshals and ten Puerto Rico Police Officers participated in the operation (**TR-1**, at p. 21).

Defendant moved to suppress, contending that the protective sweep violated the Fourth Amendment (Docket No. 56 at pp. 1-2).[1] On March 15, 2017 and May 4, 2017, the court held a suppression hearing during which it heard six witnesses (4 on behalf of the government and 2 on defendant's behalf)(Docket Nos. 71 and 74). On August 16, 2017, the First Circuit decided United States v. Delgado-Pérez, 867 F.3d 244 (1st Cir. 2017), reversing the district court's decision to deny a motion to suppress challenging the validity of a protective sweep. On August 17, 2017, the court ordered the government to show cause as to why defendant's motion should not be granted in light of Delgado-Pérez (Docket No. 79). On September 1, 2017, the government responded to the court's order (Docket No. 80). On October 20, 2017, defendant replied to the government's motion (Docket No. 82).

---

[1] After the arrest, officers read defendant his Miranda rights (**TR-2**, at pp. 22, 25-27). According to the government, the defendant waived those rights, made incriminating statements and consented to the search of the apartment and his vehicle, which led to the seizure of a pistol with an addition allowing it to be used as an automatic weapon, ammunition, small scales, cocaine, magazines and money (Docket No. 61 at 2-3, 8; **TR-1**, at pp. 74-75). Nonetheless, the motion to suppress focuses on the protective sweep, which in defendant's view was illegal and renders inadmissible all of the evidence obtained as fruit of a poisonous tree (Transcript May 4, 2017 - **TR-1**, at pp. 84-85). Along the same line, he suggested that he may challenge the incriminating statements and the consent to search by separate motion. Id.

## II.     DISCUSSION

The government contends the agents conducted a valid security sweep of defendant's residence (Docket No. 80 at 4). The Fourth Amendment proscribes unreasonable searches and seizures. U.S. Const. amend. IV. Defendant was arrested in the area facing the front door of his home on the authority of an arrest warrant.[2] The subsequent search of the residence, however, occurred without a search warrant. Arrest warrants are not search warrants. See, Steagald v. United States, 451 U.S. 204, 212-215, 217-222 (1981)(discussing differences). A warrantless search of a private residence is presumptively unreasonable unless one of a few well-delineated exceptions applies. See, Delgado-Pérez, 867 F.3d at 251 (so stating). One of those exceptions is the exception for protective sweeps conducted in conjunction with the arrest of an individual in his home. Id. (citing Maryland v. Buie, 494 U.S. 325, 327 (1990)).

A protective sweep is a quick and limited search of the premises, incident to an arrest and conducted to protect the safety of the police officers or others, that is narrowly confined to a cursory visual inspection of those places in which a person might be hiding. Id. As an exception to the warrant requirement, it is constructed on the foundational reasoning of Terry v. Ohio, 392 U.S. 1 (1968) and Michigan v. Long, 463 U.S. 1032 (1983). See, United States v. Miller, 430 F.3d 93, 98 (2d. Cir. 2005)(explaining and applying doctrine). Its purpose is to check for persons, not things, and is justified by the need to ensure the safety of those on the arrest scene. See, Buie, 494 U.S. at 334-335 & n.3.[3] For the same reason, it does not entitle officers to conduct a full search

---

[2] The defendant does not challenge the existence or validity of the arrest warrant (**TR-1** at p. 80).

[3] As such, it is distinct from the types of searches that law enforcement officers may conduct incident to arrest under Chimel v. California, 395 U.S. 752 (1969), which can extend only to the arrestee's person and the area within his immediate control. Id. at 763. See, United States v. Nascimento, 491 F.3d 25, 50 (1st Cir. 2007)(distinguishing between searches incident to arrest and protective sweeps); Delgado-Pérez, 867 F.3d at 251 & n.4 (same).

of the premises, restricting them to carry out a limited inspection of spaces where a person may actually be found. Id. at 335.

The Supreme Court has recognized two kinds of protective sweeps. The first may be conducted as a precautionary matter and without probable cause or reasonable suspicion, circumscribed to spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Id. at 334. The second may extend beyond immediately adjoining spaces. Nevertheless, it must be based upon reasonable suspicion, that is, articulable facts which would warrant a reasonably prudent officers in believing that the area to be swept harbors an individual posing a danger to those on the scene. Id.[4] The reasonable suspicion standard is considerably less demanding than the level of proof required to support a finding of probable cause, but is based on more than an unfounded speculation. See, United States v. Winston, 444 F.3d 115, 118 (1st Cir. 2006)(so noting).

The First Circuit applied these principles in Delgado-Pérez, 867 F.3d at 244. In that case, the defendant –a convicted felon – was arrested outside of his residence on the authority of a New

---

[4] The government does not seek to justify the sweep under Buie's "immediately adjoining" standard. A number of courts have categorized doorstep, doorway or threshold arrests as outside-not inside-arrests under Buie's second type of sweep to gauge the legality of officers' entering and sweeping over a residence. See, United States v. Archibald, 589 F.3d 289, 297 (6th Cir. 2009)(collecting cases). As the First Circuit held in United States v. Lawlor, 406 F.3d 37, 41-42 (1st Cir. 2005), a protective sweep of a residence may be conducted following an arrest that takes place just outside the home, if sufficient facts exist that would warrant a reasonably prudent officer to fear that the area in question could harbor an individual posing a threat to those at the scene. Still, a residence may comprise different spaces for Buie purposes and lead to different results as a function of the immediacy of the area in question to the place of the arrest. See, Archibald, 589 F.3d at 296-297 (distinguishing area immediately adjoining arrest location in the residence from other areas and applying more stringent reasonable suspicion test to areas not immediately adjoining location of arrest). Concentrating on the immediacy aspect of Buie, see United States v. Ford, 56 F.3d 265, 270 (D.C. Cir. 1995)("because the arrest took place in the hallway, and the bedroom from which Ford emerged was immediately adjoining the hallway, [the agent] could legitimately look in the bedroom for potential attackers"). Defendant's bedroom was not immediately adjoining the place of the arrest. The living room, dining room, part of the kitchen and an entertainment center were immediately adjoining the entrance door were defendant was arrested (**TR-2**, at pp. 31-33; 86). From this area, there was an inner hallway door leading to the bedrooms. Id. at p. 99. Applying Buie in an analogous context, see, United States v. Mendoza, 333 F.Supp.2d 1155, 1158-1159 (D.Utah 2004)(protective sweep of first bedroom valid under Buie's immediacy prong because the room was immediately adjacent to the living area where the arrest was taking place; however, sweep of second and third bedrooms required reasonable suspicion that they harbored a possibly dangerous person, for they were at the end of an adjoining hall rather than immediately adjacent to the main living area).

York state warrant for his arrest for drug trafficking. When officers arrived outside the defendant's residence and announced their presence, there was initially no answer. Officers began to open a rebar gate outside the residence, at which point the defendant opened a window and told the officers through the window that he was home and was going to open the door. He retrieved a key, came outside, opened the rebar gate for the officers and indicated to the officers that he was by himself. Id.

Once the defendant was outside, the officers undertook a protective sweep of the residence, noticing a firearm magazine on top of a dresser in a room off of an interior hallway. After the sweep concluded, an officer asked the defendant if there were any firearms in the residence, to which the defendant responded in the affirmative, telling the officers he had a firearm and providing its location – a dresser drawer. An officer then retrieved a loaded firearm; the defendant was asked for consent to search the residence, and he consented verbally, but declined to sign a consent form.

The district court denied a motion to suppress, and the First Circuit reversed, holding that the protective sweep was unlawful; consent to the search was tainted by the unlawful protective sweep; the government failed to show that discovery of the loaded firearm was inevitable even absent the unlawful protective sweep; and the record did not show exigent circumstances justifying the retrieval of the loaded firearm. To that end, it contrasted the facts before it to those in cases where it had upheld protective sweeps, finding that in each of those cases the officers undertook the sweep with knowledge of facts that provided them with an articulable reason to suspect that some person other than the one to be arrested could be present in the residence and pose a danger

to officers. Id. at p. 252.[5] And therefore, it concluded that in those instances, contrary to those in Delgado-Pérez, officers had a particularized reason to think that the defendant was armed and dangerous or that another person might be present in the home at the time of the arrest, let alone that another dangerous person would be. So too here.

The government asserts agents received information that defendant had a violent temperament (Docket No. 80 at p. 4). In Delgado-Pérez, however, the First Circuit left open the question of whether an arrestee's own dangerousness could be a factor in the protective sweep analysis. Id. at 253 & n.5.[6] And even if temperament could support the element of articulable suspicion to support a sweep, it would be insufficient in this instance. Agent Kenet Rivera testified that the information the Police had in a mugshot was that defendant was a dangerous person with an aggressive personality, and that he previously had an incident with a law enforcement officer (**TR-2**, at p. 77). Agent Diego Rivera stated the information that the defendant was violent was based on a police booking (**TR-1**, at p. 25).

---

[5] See, United States v. Martins, 413 F.3d 139 (1st Cir. 2005)(shooting had just taken place within 100 yards of the residence, one of the shooting victims, whom officers had reason to believe was a gang member, indicated that an associate of his was in the residence, when the officer knocked on the door of the residence and identified himself as a police officers, he heard an adult male voice from within the apartment, followed by movement and silence; when officer knocked a second time, a young child answered the door and stated that he was home alone, suggesting that an adult was concealing himself); Winston, 444 F.3d at 118-119 (defendant had been indicted along with twenty-five others; officers had reason to believe he had numerous, potentially armed and dangerous cohorts, they knocked on defendant's front door, defendant's girlfriend referred them to a neighboring residence, which the officers visited before subsequently returning to the defendant's residence; the deception providing any potential occupants inside the house five minutes to conceal themselves or prepare an ambush); Lawlor, 406 F.3d at 42 (officer had received a report of a gunshot at the scene, believed that two individuals lived in the residence and that those individuals were engaged in drug-related activities, had routinely observed individuals coming and going from the residence, and upon arriving at the residence saw "drunken combatants" and "spent shotgun shells" outside).

[6] It observed that at least one circuit has found this factor irrelevant in the protective sweep inquiry. Id. To that effect, see, United States v. Tisdale, 921 F.2d 1095, 1097 (10th Cir. 1990)("[T]he danger which justifies a protective sweep comes from the possible presence of other armed and dangerous persons in the vicinity"), cert denied 502 U.S. 986 (1991); Archibald, 589 F.3d at 299 ("[A] defendant's own dangerousness is not relevant in determining whether the arresting officers reasonably believed that someone else inside the house might pose a danger to them"); Nascimento, 491 F.3d at 49 (observing that protective sweeps are not justified by the potential threat posed by the arrestee but, rather, by the potential threat posed by unseen third parties who may be lurking on the premises); Lawlor, 406 F.3d at 41 ("In announcing the protective sweep doctrine in Buie, the Supreme Court found significant the 'risk of danger in the context of an arrest in the home' due primarily to the reality that there may be 'unseen third parties in the house'")(quoting Buie, 494 U.S. at 333, 336).

The booking and mugshot – Defendant's Exhibit B – lack factual details supporting the conclusion that defendant was violent or armed, and do not describe what prior incident Agent Kenet Rivera referred to.[7] Moreover, the day of the arrest, agents knocked on the door of the residence, announcing themselves as Puerto Rico Police (**TR-1**, at pp. 21, 24-25, 32; **TR-2**, at p. 24). After 2 or 3 minutes defendant opened the door. Id. at p. 22. He was instructed to lie down and stay on the floor. Id. He immediately abided by the officer's commands, and was arrested and handcuffed behind his back. Id. He stayed calm (**TR-1**, at p. 32; **TR-2**, at p. 86). See, United States v. Paradis, 351 F.3d 21, 29 (1st Cir. 2003)(protective sweep improper in part because officers had no reason to believe that other than the defendant, who had been arrested, no other person posing danger was in the apartment); United States v. Henry, 48 F.3d 1282, 1284 (D.C. Cir. 1995)(concluding that once the defendant was in custody, "he no longer posed a threat to the police").

The government points out defendant had a brother, and that during pre-arrest surveillance on the property they had observed defendant with another male resembling the brother outside the residence and later go into the residence building (Docket No. 80 at 5; **TR-2**, at p. 88). But the pre-arrest surveillance was conducted days before the arrest (**TR-2**, at p. 11). Additionally, no factual details were provided to gauge the alleged dangerousness of the person the agents saw with the defendant and to determine whether they sustain a reasonable inference that he would be inside defendant's residence the day of the arrest. See, United States v. Hogan, 38 F.3d 1148, 1150 (10th Cir. 1994)(where defendant exited the house and submitted to arrest, protective sweep of house was improper in part because while there was an accomplice to murder, there was no evidence that

---

[7] Nor was any evidence presented at the hearing to explain the facts in support of the conclusion that defendant was "violent" or "armed."

he would be hiding in the house a month after the event); Delgado-Pérez, 867 F.3d at 253 (no indication in the testimony that the pre-arrest "intel work" resulted in any evidence that another person might be present in the home at the time of the arrest, let alone that another dangerous person would be).

The government states that seconds after the arrest they saw some female family members had come out of the bedrooms and were approaching the living room by the front door of the residence, and they did not know who these people were (Docket No. 80 at 4-5). At the same time, Agent Diego Rivera testified that he did not have any reason to suspect there could be any person inside the defendant's residence that could harm him, his fellow officers or the defendant (**TR-1**, at pp. 26). Lack of information does not rise to the level of a specific, articulable basis upon which to justify a protective sweep. See, Delgado-Pérez, 867 F.3d at 256 (so explaining in finding protective sweep unlawful).

Together, these elements are insufficient to meet the reasonable suspicion benchmark necessary to support a protective sweep under Buie.[8] But another variable is at work in this case and leads to a different result: the fact that defendant was in his underwear at the time of the arrest. See, Nascimento, 491 F.3d at 49-50 (sustaining officer's warrantless entry to bedroom to get clothes for a defendant who was clad only in his underwear at the time of his arrest). At its root,

---

[8] See, United States v. Brown, 69 F.Supp.2d 925 (E.D. Mich. 1999)(protective sweep of main floor of defendant's house following his arrest inside exceeded its permissible scope to the extent the sweep covered areas beyond the immediate vicinity of the defendant's arrest and was not supported by articulable suspicion that a person inside the residence might pose a threat to officer safety); United States v. Pixley, 7 F.Supp.2d 52 (D.D.C. 1998)(protective sweep of a second-floor bedroom incident to the execution of arrest warrants on bank fraud charges performed by law enforcement officers while on arrestee was fully restraining on the first floor and the other restrained in the hallway of the second floor not justified in absence of reasonable belief that the area searched harbored an individual posing a danger to the officers or others); United States v. Brodie, 975 F.Supp. 851 (N.D. Tex. 1997)(protective sweep of residence unlawful where defendant was arrested outside of his duplex at the bottom of the porch steps, search extended beyond the rooms immediately adjoining the place of arrest, and officers did not articulate any specific facts which led them to believe that the defendant's residence harbored individuals posing a danger to those on the arrest scene).

the clothing exception justifies a law enforcement officer's warrantless entry into a partially clothed arrestee's home and subsequent seizure of incriminating evidence therein, when the warrantless entry is for the limited purpose of retrieving clothing or shoes for that arrestee. See, United States v. Jackson, 414 F.Supp.2d 495, 504 (D.N.J. 2006)(discussing exception). Review of cases from circuits that have recognized this exception to the warrant requirement shows that it generally falls under one of two categories.

The first category is an of-shoot of the exigent circumstances exception. See, United States v. Clay, 408 F.3d 214 (5th Cir. 2005)(finding that need to procure footwear for barefoot arrestee constituted exigent circumstances justifying officer's return to bedroom); United States v. Gwinn, 219 F.3d 326 (4th Cir. 2000)(recognizing that an arrestee's partially clothed status may qualify as an exigency justifying an officer's temporary reentry into the arrestee's home to retrieve clothes reasonably calculated to lessen the risk of injury to arrestee); United States v. Butler, 980 F.2d 619, 621-622 (10th Cir. 1992)(allowing officers to retrieve shoes for defendant because broken glass in the area where defendant was arrested presented a legitimate health and safety risk; however, finding that entry into the defendant's residence could not be effected, in the absence of consent or exigent circumstances, solely upon the desire of law enforcement officers to complete the arrestee's wardrobe); Nascimento, 491 F.3d at 50 (the need to dress partially clothed individual may constitute an exigency).[9]

The second category stems from a so-called duty to find clothing for a defendant. See, United States v. Di Stefano, 555 F.2d 1094 (2d Cir. 1977)(finding that officers had a duty to find

---

[9] Exigent circumstances justify a warrantless search in a variety of situations. See, Wayne v. United States, 318 F.2d 205, 212 (D.C. Cir. 1963)("A myriad of circumstances" could fall within the term "exigent circumstances"). The exception reflects an understanding and appreciation of how events occur in the real world, for police officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving. See, Morse v. Cloutier, 869 F.3d 16, 23-24 (1st Cir. 2017)(so acknowledging).

clothing for an arrestee clad only in a nightgown and bathrobe or permit her to do so). In contrast, two circuits have rejected the underlying rationales for the exception. See, United States v. Whitten, 706 F.2d 1000, 1016 (9th Cir. 1983)(finding officer's entry into room without specific request or consent unlawful); United States v. Kinney, 638 F.2d 941, 945 (6th Cir. 1981), cert denied 452 U.S. 918 (1981)(entry cannot be justified when defendant did not request permission to secure additional clothing and did not consent to an entry of his home).

Some courts take issue with the notion that merely transporting a shirtless or barefoot individual to police headquarters amounts to exigent circumstances sufficient to dispense with the warrant requirement. See, Jackson, 414 F.Supp.2d at 504 & n.11. But as stated above, the First Circuit recognized in Nascimento that the need to dress a partially clothed arrestee may constitute an exigency justifying the officers in entering a room in order to obtain needed clothing. Id. It stated that generalizations are hazardous. Id. Nonetheless, it reasoned that both human dignity and the New England climate counseled there in favor of a more complete wardrobe, particularly when the district court found that the police neither manipulated the situation nor used the defendant's "dishabille" as a pretext to carry out an otherwise impermissible search. Id.

Puerto Rico's climate is different than New England's. Yet the First Circuit did not describe the climatic conditions at the time of the defendant's arrest in Nascimento. Thus, the court finds here that the officers' need to find clothing for the defendant together with the fact that they did not manipulate the scene to bypass the warrant requirement, justified their entry into defendant's residence without a warrant following his arrest. Defendant was arrested in his underwear and barefoot (**TR-1**, at pp. 6-8, 25). Immediately after the arrest, Agent León entered the residence to find clothing for the defendant. Id. at pp. 7-8. When he entered the master

bedroom – defendant's bedroom – he saw in plain view a vanity - a wall unit - with a pistol, a magazine, a bullet, and a bag with marijuana shavings on top of the unit (**TR-1**, at pp. 9-10, 27).[10]

The "plain view" doctrine permits a law enforcement officer to seize without a warrant what clearly is incriminating evidence or contraband. See, Washington v. Chrisman, 455 U.S. 1, 5-6 (1982)(discussing doctrine). It is grounded on the proposition that once law enforcement officers are lawfully in a position to observe an item first-hand, its owner's privacy interests in that item is lost. See, Illinois v. Andreas, 463 U.S. 765, 771 (1983)(explaining proposition). By extension, it provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment. See, Texas v. Brown, 460 U.S. 730, 737 (1983)(so concluding). In this case, the circumstances permitted Agent León to procure clothing for the defendant. So the items seized in the bedroom were validly seized. See, Di Stefano, 555 F.2d at 1101 (government entitled to use incriminating evidence discovered by agents in plain view while looking for clothing for an arrestee in their custody). [11]

### III. CONCLUSION

The defendant's arrest was valid. The warrantless entry into his bedroom was justified by the need to get him clothing. The evidence seized was in plain view. All in all, the intrusion was

---

[10] Agent León's version is credible. The intrusion into the bedroom was slight and temporary, lasting maybe two or three minutes (**TR-1**, at pp. 16-17). In addition, Agent Diego Rivera credibly explained that normally, officers allow defendants to get dressed before taking them to the station. Id. at pp. 43-44.

[11] Whether officers intended to enter the bedroom in any event is irrelevant, for it was entirely lawful for Agent León to be in the room. See, Wren v. United States, 517 U.S. 806, 813-814 (1996)(expressing unwillingness to entertain Fourth Amendment challenges based on the actual motivations of individual officers: "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justifications for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify the action"). See also, albeit in context of a traffic stop, United States v. Mc Gregor, 650 F.3d 813, 829 (1st Cir. 2011)(observing that an officer can stop a car if he sees a driver commit a traffic offense, even if the stop is just an excuse to investigate something else)(citing Wren, 517 U.S. at 810)).

reasonable under the Fourth Amendment.  Consequently, the motion to suppress at Docket No. 56 is DENIED.

   **SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of November, 2017.

                                     s/ Pedro A. Delgado Hernández
                                     PEDRO A. DELGADO HERNÁNDEZ
                                     United States District Judge